**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

WONDER WILLIAMS,

|  |  |  |
|---|---|---|
| | Plaintiff, | 9:20-cv-1417 (BKS/TWD) |

v.

ANTHONY ANNUCCI, Acting Commissioner,
Department of Corrections and Community Supervision,
JAMES O'GORMAN, Deputy Commissioner for
Correctional Facilities, JOHN COLVIN, Superintendent of
Five Points, MATTHEW THOMS, Superintendent of Mid-
State, DONALD VENETTOZZI, Director of DOCCS
Special Housing and Inmate Disciplinary Program, JOHN
OR JANE DOES 1–5, Members of the DOCCS SHMC at
Five Points, and JOHN OR JANE DOES 6–10, Members
of the DOCCS SHMC at Mid-State,

Defendants.[1]

---

**Appearances:**

*For Plaintiff:*
James D. Arden
Julia L. Bensur
Laura Sorice
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019


*For Defendants Annucci, O'Gorman, Colvin, Thoms, and Venettozzi:*
Letitia James
Attorney General of the State of New York

---

[1] While Plaintiff's original complaint asserted claims against Defendants Joseph Bellnier and Albert Prack, (*see* Dkt. No. 1), the First Amended Complaint does not name either Bellnier or Prack as a Defendant, (*see* Dkt. No. 24). The parties' briefs likewise do not mention Defendants Bellnier and Prack or include them in the case caption. (Dkt. Nos. 28-1, 30, 33). Accordingly, the Court deems Plaintiff's claims against Defendants Bellnier and Prack to be waived. *See Elliot v. City of Hartford*, 649 F. App'x 31, 32 (2d Cir. 2016) (summary order) (noting that it is "generally the case that '[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived'" (quoting *Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002))). The Clerk of the Court is respectfully directed to terminate Defendants Bellnier and Prack on the docket.

Keith J. Starlin
Assistant Attorney General, of Counsel
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff Wonder Williams brings this action under 42 U.S.C. § 1983 against Defendants

Anthony Annucci, James O'Gorman, John Colvin, Matthew Thoms, Donald Venettozzi, and

John or Jane Does 1–10, alleging violations of his Eighth and Fourteenth Amendment rights

during Plaintiff's incarceration in New York State Department of Corrections and Community

Supervision ("DOCCS") correctional facilities. (Dkt. No. 24). Presently before the Court is

Defendants' motion, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss Plaintiff's first

amended complaint ("FAC"). (Dkt. No. 28). Plaintiff has opposed the motion, (Dkt. No. 30), and

Defendants have responded, (Dkt. No. 33). For the following reasons, Defendants' motion is

granted in part and denied in part.

## II.    FACTS[2]

Plaintiff was placed into DOCCS custody on March 6, 2010 for charges "stemming from

his involvement in a shooting and murder-for-hire plot." (Dkt. No. 24, ¶ 32). Immediately upon

entering DOCCS custody, Plaintiff was placed in administrative segregation ("Ad Seg"), a form

of solitary confinement in the Special Housing Unit ("SHU"), at Auburn Correctional Facility

("Auburn"). (*Id.* ¶ 33). Plaintiff's placement on Ad Seg was recommended by S.B. Duncan and

Superintendent Graham at Auburn, because they believed Plaintiff's placement in the general

---

[2] The facts are drawn from the FAC. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

population posed an "extreme risk to staff, inmates and the general public as well as the safety, security, and good order of the facility." (*Id.* ¶¶ 3, 33). In support of this determination the correctional staff cited Plaintiff's "use of telephones, U.S. Mail, Western Union, and jail visits while he was incarcerated on Riker's Island in 2007 to coordinate a failed murder-for-hire plot." (*Id.* ¶ 33). Plaintiff remained confined in Ad Seg at Auburn until July 6, 2015. (*Id.* ¶ 34). On July 6, 2015, Plaintiff moved to Ad Seg at Five Points Correctional Facility ("Five Points"). (*Id.*).

While in Ad Seg, Plaintiff was housed in a concrete cell "roughly the size of a standard parking space" for about 23 hours per day. (*Id.* ¶ 41). Plaintiff's cells were dirty, "with dirty water sometimes coming out of the sinks," and there was always a bright light kept on in or outside his cell. (*Id.*). He was allowed to shower three times per week, although he often had to shower in cold water or was not taken to the showers by corrections officers at his allotted time. (*Id.* ¶ 42). Plaintiff was allowed one hour of outdoor recreation each day. (*Id.* ¶ 43). Plaintiff did not have access to group meals, recreation, or education and had "minimal human interaction." (*Id.* ¶¶ 44–46).

New York regulations required DOCCS to periodically conduct reviews of Plaintiff's status on Ad Seg. (*Id.* ¶ 61; *see id.* (alleging that DOCCS was required to review his status every 30 days)); *see also* 7 N.Y.C.R.R. § 301.4(d) ("An inmate in administrative segregation status shall have such status reviewed every 60 days in accordance with the [specified] procedure.").[3] However, Plaintiff alleges that he never received any meaningful review of his Ad Seg status. (Dkt. No. 24, ¶ 62). The reviews conducted by DOCCS contained "substantially similar, sometimes even identical, language to prior reviews and used formulaic, boilerplate language"

---

[3] Section 301.4 was amended effective December 16, 2020. In this decision, the Court cites to the version of Section 301.4 that was in effect at the time Plaintiff was confined in Ad Seg and the step-down program.

that did not consider any changed circumstances. (*Id.* ¶ 63). Plaintiff's reviews from May 2010 to November 2017 contained "the same recitation" of his criminal history, his status as a gang member, and details regarding his crime of conviction and stated "no other basis" for keeping Plaintiff in Ad Seg. (*Id.* ¶¶ 64–65). Plaintiff was not released from Ad Seg even when the reviews acknowledged his positive behavior. (*Id.* ¶¶ 67–72; *see, e.g.*, *id.* ¶¶ 68 (February 12, 2014 review stating: "[Plaintiff's] current behavior is within acceptable and appropriate limits."), 69 (October 10, 2014 review noting that Plaintiff "has a clean disciplinary record"), 70 (September 8, 2015 review noting that "[w]hile in administrative segregation [Plaintiff] has exhibited respectful behavior")). Moreover, Plaintiff was not given any indication as to how he could change his behavior to be taken off Ad Seg status. (*Id.* ¶ 63).

On December 1, 2017, Plaintiff was placed into the step-down program and housed in the SHU at Mid-State Correctional Facility ("Mid-State"). (*Id.* ¶¶ 35–36). The step-down program is designed to provide for a "phased transition for individuals in Ad Seg to return to the general population." (*Id.* ¶ 37). Plaintiff alleges, however, that the "conditions in the step-down program were equally as restrictive as in Ad Seg and constituted continued solitary confinement." (*Id.* ¶ 37). Plaintiff remained confined in his cell for 23 hours a day, and often was denied his one hour of daily recreation. (*Id.* ¶ 50). Although Plaintiff did receive an "additional four hours of inmate programming sessions each week," he was chained during the sessions. (*Id.*). Plaintiff "was not afforded any hearing or subsequent review of his segregated status" while in the step-down program and therefore "spent over a year in the step-down program without a meaningful review of his status, even though the conditions constituted continued solitary confinement." (*Id.* ¶¶ 35, 52, 74–75).

As a result of the time he spent in solitary confinement, Plaintiff suffered from medical and mental health conditions. (*Id.* ¶ 53). Plaintiff suffered from sleep disturbances, migraines, weight loss due to a thyroid condition, and back and neck pain. (*Id.* ¶¶ 55–58). He also suffered from "anxiety, depression, hopelessness, insomnia, and noticeable changes to his personality including increased introversion and difficulty focusing on daily tasks." (*Id.* ¶ 59). Plaintiff alleges that Defendants knew the deleterious effects of solitary confinement and that they were aware, by means of administrative grievances and written complaints, that Plaintiff was suffering "significant and lasting physical and mental injury as a result of his solitary confinement." (*Id.* ¶¶ 77–78).

On February 6, 2019, Plaintiff was moved to the general population. (*Id.* ¶ 38). On February 23, 2021, Plaintiff was released from DOCCS custody on parole. (*Id.* ¶ 31).

## III.   STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

5

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.   DISCUSSION

### A.   STATUTE OF LIMITATIONS

Defendants argue that Plaintiff's claims regarding any acts or omissions prior to November 16, 2017 should be dismissed as barred by the statute of limitations. (Dkt. No. 28-1, at 9–13); *see DeSuze v. Ammon*, 990 F.3d 264, 271 (2d Cir. 2021) ("[Section 1983] claims . . . are subject to a three-year statute of limitations."). Plaintiff responds that his Eighth Amendment claims are timely because the continuing violation doctrine applies and that his Fourteenth Amendment procedural due process claims are timely because the FAC alleges actions "that either apply to the entire duration" of Plaintiff's solitary confinement or which "expressly occurred after November 2017." (Dkt. No. 30, at 13–17).

The continuing violation doctrine applies to claims that are "composed of a series of separate acts that collectively constitute one unlawful [ ] practice." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Washington v. County of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004)) (internal quotation marks omitted). Where applicable, the doctrine provides an "exception to the normal knew-or-should-have-known accrual date." *Id.* (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)) (internal quotation marks omitted). The continuing violation doctrine applies to "claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Lucente v. County of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002)). It does not, however, apply to "discrete unlawful acts," even if those discrete unlawful acts are part of "serial violations." *Id.*

To assert a timely claim under the continuing violation doctrine, a plaintiff must allege "some non-time-barred acts" contributing to the alleged violation. *Id.* (quoting *Harris*, 186 F.3d at 250).[4] "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *See Connecticut Gen. Life Ins. Co. v. BioHealth Labs., Inc.*, 988 F.3d 127, 131–32 (2d Cir. 2021) (quoting *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015)). In the context of an alleged continuing violation, if a plaintiff can demonstrate "some [ ] act that did occur within the statute of limitations, so that his claim would not be time-barred," *Harris*, 186 F.3d at 250, "the mere allegation of the existence of such a [continuing] policy would be sufficient to withstand a challenge for failure to state a claim," *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997)).

The Second Circuit has applied the continuing violation doctrine to Eighth Amendment deliberate indifference claims. *See, e.g.*, *Gonzalez*, 802 F.3d at 224 (applying the doctrine to an Eighth Amendment claim for cruel and unusual punishment); *Shomo*, 579 F.3d at 182 (holding that the doctrine can apply to an Eighth Amendment claim for deliberate indifference to serious medical needs); *Smith v. Annucci*, No. 18-cv-06261, 2019 WL 539935, at *7, 2019 U.S. Dist. LEXIS 21888, at *20–21 (W.D.N.Y. Feb. 11, 2019) (applying the doctrine to an Eighth Amendment claim challenging long-term confinement in SHU). Accordingly, Plaintiff's Eighth Amendment claims are subject to the continuing violation doctrine, and at what point his claims accrued "is a question of fact." *Gonzalez*, 802 F.3d at 224. Moreover, even where a claim subject

---

[4] Moreover, where a plaintiff brings a claim against multiple defendants, he must allege a non-time-barred act as to *each* defendant. *See Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) ("The continuing violation doctrine does not apply to the claim against [the individual defendant] because there is no indication that [the plaintiff] is able to allege acts involving [that defendant] that fall within the three-year statutory period."); *Lucente*, 980 F.3d at 310 (holding that Section 1983 claims could proceed against certain individual defendants "as long as each plaintiff alleged an unconstitutional act committed by each particular defendant that falls within the three-year statutory period").

to the continuing violation doctrine accrues before the statute of limitations expires, it will still be timely "as long as the violation of rights continued past" the expiration of the limitations period—i.e., as long as the plaintiff alleges a non-time-barred act contributing to the alleged violation. *Id.* (citing *Morgan*, 536 U.S. at 117); *Lucente*, 980 F.3d at 309.

Here, Plaintiff alleges that he was held in solitary confinement from March 6, 2010 to February 6, 2019. (Dkt. No. 24, ¶¶ 25, 32–38). Therefore, regardless of when Plaintiff's Eighth Amendment claim challenging his long-term confinement in isolation accrued, Plaintiff has alleged that the violation of his rights continued until February 6, 2019, less than two years before he commenced this action on November 16, 2020. (*See* Dkt. No. 1). The Court therefore cannot conclude from the face of the FAC that Plaintiff's Eighth Amendment claims are barred as a matter of law. *See Cardwell v. Davis Polk & Wardwell LLP*, No. 19-cv-10256, 2020 WL 6274826, at *40, 2020 U.S. Dist. LEXIS 198655, at *117 (S.D.N.Y. Oct. 24, 2020) ("The Court declines to parse how the continuing violation doctrine may apply to [the plaintiff's] claims at the motion to dismiss stage.") (quotation marks omitted).

On the other hand, the continuing violation doctrine is not applicable to claims asserting a violation of the plaintiff's procedural due process rights. *See, e.g.*, *Gonzalez*, 802 F.3d at 223 (noting the "inapplicability" of the doctrine to procedural due process claims); *Smith*, 2019 WL 539935, at *5, 2019 U.S. Dist. LEXIS 21888, at *12–14 (holding the doctrine did not apply to the plaintiff's claims for procedural due process violations and collecting cases). Even though successive denials of a plaintiff's procedural due process rights "may combine to form a 'serial violation,'" each denial is a discrete act which triggers the accrual of a discrete claim. *Gonzalez*, 802 F.3d at 223. Accordingly, Plaintiff has a discrete claim for each alleged denial of "meaningful and timely periodic review" of his detention in Ad Seg or of "meaningful notice of

what he must do to earn release," (Dkt. No. 24, ¶ 114), and each of those claims is subject to a three-year statute of limitations. Therefore, Plaintiff's procedural due process claim would be able to proceed as to any reviews—or lack thereof—occurring within three years of the filing of his complaint.

However, dismissal under Federal Rule of Civil Procedure 12(b)(6) on the ground of a statutory bar, such as lack of timeliness, is appropriate only when "it is clear from the face of the complaint" that "the plaintiff's claims are barred as a matter of law." *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015) (quoting *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008)). Here, Plaintiff alleges that he exhausted his administrative remedies by appealing the finding of his initial Ad Seg hearing, appealing his Ad Seg reviews, and submitting various grievances to the Inmate Grievance Resolution Committee. (Dkt. No. 24, ¶¶ 82–86). The Second Circuit has held that "the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." *Gonzalez v. Hasty*, 651 F.3d 318, 323–24 (2d Cir. 2011). The parties have not addressed how long it took Plaintiff to complete the exhaustion process regarding his procedural due process claims and for how long the statute of limitations applicable to his claims should be tolled. Accordingly, the Court cannot determine from the face of the FAC that any of Plaintiff's claims are "barred as a matter of law." *Sewell*, 795 F.3d at 339.[5] Accordingly, Defendants' motion to dismiss on statute of limitations grounds is denied.

### B. PERSONAL INVOLVEMENT

Defendants argue that Plaintiff's claims must be dismissed because the FAC fails to allege the personal involvement of any Defendant in the alleged violation of his constitutional

---

[5] Because factual issues regarding the length of time for which the statute of limitations should be tolled would remain in any case, the Court does not consider the records of Plaintiff's Ad Seg reviews submitted by Defendants with their motion to dismiss, (*see* Dkt. No. 28-3), and confines its consideration to the FAC.

rights. (Dkt. No. 28-1, at 13–25). Plaintiff responds that the FAC sufficiently alleges the personal involvement of each Defendant by alleging each Defendant's knowledge of ongoing constitutional violations in solitary confinement. (Dkt. No. 30, at 18–26).

It is well-settled that, to establish a defendant's individual liability in a suit brought under Section 1983, a plaintiff must show "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted). A plaintiff must "allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). The Second Circuit recently held that the *Colon* test for showing the personal involvement of supervisory officials was abrogated by the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020); *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Specifically, the Second Circuit held that "there is no special rule for supervisory liability" and that "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676).[6] Thus, the "factors" necessary to plead and establish a Section 1983 violation "'will vary with the constitutional provision at issue' because the elements of different constitutional violations vary." *Id.* (quoting *Iqbal*, 556 U.S. at 676). To state an Eighth Amendment claim, which requires a *mens rea* of deliberate indifference, a plaintiff must allege that the supervisor had "subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." *See id.* at 616 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). To state a Fourteenth Amendment claim for violation of procedural due

---

[6] Plaintiff is incorrect that *Tangreti* is "inapposite" because there "the court set the standard for liability under Section 1983 at the *summary judgment* stage, not the motion to dismiss stage." (*See* Dkt. No. 30, at 18). *Tangreti* makes clear that a plaintiff "must *plead* and prove" that each individual defendant violated the Constitution. 983 F.3d at 618 (emphasis added).

process rights, a plaintiff must allege a protected liberty or property interest and that the plaintiff

was deprived of that interest without sufficient process. *Shakur v. Selsky*, 391 F.3d 106, 118 (2d

Cir. 2004) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

### 1.     Acting Commissioner Annucci

The FAC alleges that Annucci, as Acting Commissioner of DOCCS, "is responsible for

the overall management and operation of DOCCS" and that his "responsibilities include

reviewing and approving the transfer of prisoners to DOCCS Special Housing Units ('SHU'),

including administrative Segregation ('Ad Seg') and the step-down program, under a Central

Office placement." (Dkt. No. 24, at ¶ 12). The FAC further alleges that, "[u]pon information and

belief, ANNUCCI approved [Plaintiff's] continued solitary confinement for a period of time

relevant to this action." (*Id.*). Plaintiff also alleges that Annucci "has final policy-making and

supervisory authority within DOCCS and is personally involved in authorizing and maintaining

the unconstitutional policies and practices" challenged by Plaintiff, and that he "is well aware" of

the "unconstitutional risk of harm to inmates" resulting from lengthy periods of solitary

confinement. (*Id.* ¶¶ 12–13).

The Court finds that the FAC does not plausibly allege constitutional claims under

Section 1983 against Annucci. Although the FAC alleges that Annucci approved Plaintiff's

solitary confinement at some point, it does not plausibly allege facts indicating that Annucci had

"subjective knowledge of a substantial risk of serious harm" to Plaintiff in particular and

disregarded that risk. *See Tangreti*, 983 F.3d at 616. Moreover, given the abrogation of the *Colon*

factors previously used to establish supervisory liability, the allegations regarding Annucci's

policymaking authority and general awareness of unconstitutional practices are insufficient to

adequately plead his subjective knowledge as to Plaintiff's situation specifically. To the extent

that Plaintiff asks the Court to infer that Annucci was aware of and personally involved in

Plaintiff's injuries based simply on his position as Acting Commissioner, that is "precisely the kind of inference about supervisory officials held impermissible by the Second Circuit in *Tangreti*." *Zielinski v. Annucci*, No. 17-cv-1042, --- F. Supp. 3d. ---, 2021 WL 2744684, at *8, 2021 U.S. Dist. LEXIS 124088, at *20 (N.D.N.Y. July 2, 2021).

Plaintiff also alleges that "Defendants" deprived him of "a protected liberty interest in avoiding long-term solitary confinement," "meaningful and timely periodic review of his detention in Ad Seg, as well as meaningful notice of what he must do to earn release," in violation of the Fourteenth Amendment's Due Process Clause. (Dkt. No. 24, ¶ 114). However, the FAC contains no allegations regarding Annucci's individual actions with respect to Plaintiff and therefore does not plausibly allege his personal involvement in the alleged violation of Plaintiff's procedural due process rights. *Cf. Jackson v. Annucci*, No. 20-cv-02008, 2021 WL 2581340, at *5, 2021 U.S. Dist. LEXIS 117276, at *14 (S.D.N.Y. June 23, 2021) (finding no personal involvement where the allegations did not "connect Annucci to the specific constitutional violations" alleged).

Accordingly, Plaintiff's Section 1983 claims against Annucci are dismissed.

### 2.   Deputy Commissioner O'Gorman

The FAC alleges that O'Gorman, as Deputy Commissioner of DOCCS, had "policy-making and supervisory authority within DOCCS" and was "personally involved in authorizing and maintaining the unconstitutional policies and customs" at issue. (Dkt. No. 24, ¶ 14). The FAC further alleges that, "[u]pon information and belief," O'Gorman "instituted policies that facilitated [Plaintiff's] placement in Ad Seg, including the lack of meaningful review of his status." (*Id.*). Plaintiff alleges that O'Gorman was "responsible for the overall management and operation of the correctional institutions within DOCCS" and that his "responsibilities included reviewing and approving the transfer and assignment of prisoners to SHU, including Ad Seg and

the step-down program." (*Id.* ¶ 15). Plaintiff alleges that O'Gorman was the "final arbiter" of his

continued placement in solitary confinement, (*id.* (citing 7 N.Y.C.R.R. § 301.4(d)(3))), and that,

upon information and belief, O'Gorman "approved [Plaintiff's] continued confinement in

solitary confinement . . . for a period of time relevant to this action." (*Id.*). O'Gorman's approval

"included signing each review despite lacking any justification for continuing" Plaintiff's

detention or allowing Plaintiff's continued placement in solitary without meaningful review.

(*Id.*). The FAC further alleges that O'Gorman, "on at least one occasion since November 2017"

and "as mandated by New York regulations," "reviewed, approved, and signed off on the

disciplinary review boards'[7] continued decisions to keep [Plaintiff] confined in solitary

confinement, in knowing disregard of the lack of penological justification for such confinement."

(*Id.* ¶ 16). Finally, Plaintiff alleges that O'Gorman, like Annucci, "has been on notice of the

constitutional violations suffered by inmates" subjected to prolonged solitary confinement. (*Id.*

¶ 17).

The Court finds that the FAC plausibly alleges O'Gorman's personal involvement in the

alleged violations of Plaintiff's Eighth and Fourteenth Amendment rights. Contrary to

Defendants' argument that the FAC is "bereft of factual detail" to support the allegation that

O'Gorman was personally involved, (*see* Dkt. No. 28-1, at 18), the FAC specifically alleges that

O'Gorman was the "final arbiter" of Plaintiff's continued placement in solitary confinement and

that he therefore approved Plaintiff's continued placement "in solitary confinement, including

administrative segregation and the step-down program," (Dkt. No. 24, ¶ 15); *see also* 7

N.Y.C.R.R. § 301.4(d)(3) (providing that, where an inmate in Ad Seg "is to receive central office

---

[7] This case does not implicate disciplinary hearings or the disciplinary process. The FAC does not explain what a "disciplinary review board" is, or its relevance here.

review," the deputy commissioner, "[u]pon receipt of the materials from the central office committee . . . shall make the determination to retain the inmate in or release the inmate from administrative segregation"). From the allegations that O'Gorman approved Plaintiff's continued placement in solitary confinement, it is reasonable to infer that O'Gorman was subjectively aware of the risk that Plaintiff's constitutional rights were being violated by prolonged confinement in isolation, and that he disregarded that risk by approving his continued placement. *See Farmer*, 511 U.S. at 837; *see also H'Shaka v. O'Gorman*, 444 F. Supp. 3d 355, 376 (N.D.N.Y. 2020) (finding personal involvement of DOCCS defendants where they "were directly involved in the decision to keep Plaintiff in Ad Seg").[8] Moreover, these allegations "connect" O'Gorman to the review of Plaintiff's continued status in solitary and the alleged violation of Plaintiff's procedural due process rights. *Cf. Jackson*, 2021 WL 2581340, at *5, 2021 U.S. Dist. LEXIS 117276, at *14.

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's Section 1983 claims against O'Gorman.

### 3.     Superintendents Colvin and Thoms

The FAC alleges that Colvin, the Superintendent at Five Points, and Thoms, the Superintendent at Mid-State, "are responsible for the care, custody, and safety of all prisoners under their immediate jurisdiction." (Dkt. No. 24, ¶ 18). The FAC further alleges that Colvin and Thoms "managed DOCCS facilities where [Plaintiff] was housed in SHU" and had "policy-making and supervisory authority over all operations" at their respective facilities. (*Id.* ¶ 19). The

---

[8] Defendants argue that Plaintiff's original complaint alleged that Joseph Bellnier occupied the position of Deputy Commissioner until his retirement in September 2017, and that O'Gorman therefore did not become Deputy Commissioner until after that time. (Dkt. No. 28-1, at 19). However, "[i]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citations omitted). Accordingly, the Court does not credit this argument and confines its analysis to the allegations of the FAC.

FAC alleges that the DOCCS Superintendents "were personally involved in the decision to confine inmates, including [Plaintiff], to Ad Seg and SHU." (*Id.*). More specifically, Plaintiff alleges: "Under DOCCS regulations, the Superintendent of each facility is required to make an independent determination as to whether an inmate remains in solitary confinement or is released from Ad Seg or the step-down program." (*Id.* (citing 7 N.Y.C.R.R. § 301.4(d)(2) (providing that "the superintendent shall, except where the superintendent or designee refers the matter to central office," "make a determination to retain the inmate in or release the inmate from administrative segregation"))). Plaintiff alleges that Colvin and Thoms "denied [Plaintiff] his right to meaningful review of his Ad Seg status, approved the disciplinary review boards'[9] continued decisions to keep [Plaintiff] in solitary confinement, and failed to provide [Plaintiff] with adequate living conditions." (*Id.*). The FAC alleges that Colvin and Thoms "signed off on the perfunctory Ad Seg reviews" "in knowing disregard of their lack of justification." (*Id.* ¶ 20). With respect to SHU, the FAC alleges that DOCCS utilized a committee at each facility to make recommendations to the Superintendent regarding whether "a SHU prisoner should be granted a time-cut to his SHU sentence under the Superintendent's discretionary authority." (*Id.* ¶ 23).

At this stage, and for similar reasons as discussed above regarding O'Gorman, the Court finds that the FAC plausibly alleges Colvin and Thoms's personal involvement in the alleged violations of Plaintiff's Eighth and Fourteenth Amendment rights. While the Court agrees with Defendants that this case does not implicate the Superintendents' authority to review disciplinary hearings imposing punishment and that Section 301.4 does not on its face address a Superintendent's responsibilities in connection with the step-down program, (*see* Dkt. No. 28-1, at 20–23), the FAC plausibly alleges the Superintendents' personal involvement in the decision

---

[9] *See supra* Section IV.B.2., n.7.

to continue an inmate's placement in Ad Seg and SHU. With respect to Ad Seg, Plaintiff has alleged that Colvin and Thoms were required to make independent determinations regarding his continued status on Ad Seg and that they signed off on the reviews which prolonged his solitary confinement. (Dkt. No. 24, ¶¶ 19–20). It is therefore reasonable to infer that, because they were involved in decisions approving Plaintiff's continued solitary confinement, Colvin and Thoms were subjectively aware of and disregarded the risk that Plaintiff's constitutional rights were being violated. *See Farmer*, 511 U.S. at 837. Moreover, by alleging that Colvin and Thoms "signed off" on "perfunctory" reviews that deprived Plaintiff of his right to meaningful review of his status in solitary confinement and, with respect to SHU, had discretionary authority to make time-cuts, the FAC plausibly alleges the Superintendents' personal involvement in the alleged denial of Plaintiff's procedural due process rights. *Cf. Jackson*, 2021 WL 2581340, at *5, 2021 U.S. Dist. LEXIS 117276, at *14.

### 4. Director Venettozzi

The FAC alleges that Venettozzi's authority as Special Housing Unit Director includes "reviewing, affirming, modifying, or reversing dispositions imposed at Tier III Hearings." (Dkt. No. 24, ¶ 21). The FAC also alleges that, [u]pon information and belief," Venettozzi denied Plaintiff meaningful review of his status in solitary confinement "on at least one occasion since November 2017 by reviewing, approving, and signing off on the disciplinary review boards' repeated decisions" to keep him there. (*Id.* ¶ 22).

The Court finds that the FAC does not plausibly allege Venettozzi's personal involvement in the alleged violations of Plaintiff's constitutional rights. Although Plaintiff suggests in his opposition that Venettozzi's authority over dispositions imposed at Tier III Hearings extends to the hearing that "resulted in [Plaintiff's] initial placement in Ad Seg," (Dkt. No. 30, at 23), this allegation is not contained in the FAC. *See Faulkner v. Beer*, 463 F.3d 130,

134 (2d Cir. 2006) ("Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."). Indeed, the FAC does not allege that Venettozzi was in fact involved in Plaintiff's initial placement in solitary, or that the initial placement in Ad Seg itself violated Plaintiff's constitutional rights. The only other allegation regarding Venettozzi is a conclusory statement that Venettozzi at some point reviewed, approved, and signed off on the "disciplinary review boards' repeated decisions to keep [Plaintiff] in solitary confinement." (*Id.* ¶ 22).[10] This allegation is insufficient to plausibly allege facts indicating that Venettozzi had "subjective knowledge of a substantial risk of serious harm" to Plaintiff specifically and disregarded that risk. *See Tangreti*, 983 F.3d at 616. The FAC also does not plausibly allege Venettozzi's personal involvement in the alleged violation of Plaintiff's procedural due process rights. *Cf. Abdul-Halim v. Bruyere*, No. 19-cv-740, 2021 WL 3783087, at *3, 2021 U.S. Dist. LEXIS 161441, at *7 (N.D.N.Y. Aug. 26, 2021) (noting that affirming the outcome of a prison hearing is not sufficient to establish personal involvement).

Accordingly, Plaintiff's Section 1983 claims against Venettozzi are dismissed.

### C.   PROCEDURAL DUE PROCESS CLAIMS

Defendant argues that Plaintiff's procedural due process claim should be dismissed because Plaintiff did not have a liberty interest in not being placed in the step-down program and therefore was not entitled to any review of his placement there. (Dkt. No. 28-1, at 25–26).[11] Plaintiff responds that he has a liberty interest in not being subjected to extended time in solitary

---

[10] *See supra* Section IV.B.2., n.7.

[11] Defendants' argument does not address any procedural due process claims accruing before Plaintiff's move to the step-down program on December 1, 2017, on the view that those claims are time-barred. However, for the reasons discussed above, *supra* Section IV.A, Defendants' motion to dismiss any claims on statute of limitations grounds is denied.

confinement, which includes the step-down program, and that his time in the step-down program therefore triggered procedural due process protections. (Dkt. No. 30, at 28–31).

To state a claim under Section 1983 for the denial of procedural due process, a plaintiff must allege both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *Shakur*, 391 F.3d at 118 (citing *Thompson*, 490 U.S. at 460). "[A] prisoner's restricted confinement within a prison does not give rise to a liberty interest, warranting procedural due process protection, unless the conditions and duration 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Sealey v. Giltner*, 197 F.3d 578, 583 (2d Cir. 1999) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Confinement to segregated housing may trigger procedural due process protections, depending on the length, frequency, and conditions of the confinement. *See Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000) (noting that the "duration and the frequency of such deprivations are highly relevant to whether the conditions of a plaintiff's confinement should be considered atypical" (citations omitted)); *see also Williams v. Chuttey*, No. 15-cv-1278, 2017 WL 9673722, at *4, 2017 U.S. Dist. LEXIS 144253, at *10 (N.D.N.Y. Sept. 5, 2017) (noting that there is no "bright line rule that a certain period of confinement in keeplock or a segregated housing unit automatically gives rise to due process protection"), *report-recommendation adopted by* 2018 WL 1413049, 2018 U.S. Dist. LEXIS 45931 (N.D.N.Y. Mar. 21, 2018), *aff'd*, 767 F. App'x 105 (2d Cir. 2019). A sufficiently long confinement, even under normal SHU conditions, is "a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*." *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (holding that procedural due process protections were required for a confinement in SHU of 305 days).

At this stage, the Court finds that Plaintiff has adequately alleged that he had a liberty interest in avoiding his restricted confinement, whether in Ad Seg or the step-down program, triggering procedural due process protections. Plaintiff alleges that he was in solitary confinement from March 6, 2020 until February 6, 2019, a total of almost nine years. (Dkt. No. 24, ¶¶ 25, 32–38). Plaintiff was placed into the step-down program on December 1, 2017 and remained there for approximately 432 days before being released into the general population. (*Id.*). Moreover, the FAC alleges that "conditions in the step-down program were equally as restrictive as in Ad Seg and constituted continued solitary confinement." (*Id.* ¶¶ 47–48). Plaintiff remained housed in SHU while in the step-down program and was confined to his cell for 23 hours a day. (*Id.* ¶¶ 49–50). Plaintiff alleges that the "only minor difference" between Ad Seg and the step-down program was that he received "an additional four hours of inmate programming sessions each week," although he was "chained" during the sessions. (*Id.* ¶ 50). While an inmate may not have a liberty interest in participating in the step-down program to facilitate early release into the general population, *Animashaun v. Fischer*, No. 19-cv-820, 2020 WL 374578, at *17, 2020 U.S. Dist. LEXIS 11093, at *42 (N.D.N.Y. Jan. 23, 2020), Plaintiff's allegations regarding his confinement in SHU while in the step-down program, for approximately 432 days, plausibly allege a "sufficient departure from the ordinary incidents of prison life to require procedural due process protections," *Howard*, 215 F.3d at 231 (holding procedural due process protections were triggered by a typical SHU confinement lasting 305 days).

The Court also finds that Plaintiff plausibly alleged that he was deprived of his liberty interest in avoiding long periods of solitary confinement without sufficient due process. Defendants cite to the fact that there are no allegations about the step-down program in the due

process "lack of meaningful review" cause of action. (Dkt. No. 28-1, at 26). But all of the earlier allegations in the FAC were expressly incorporated into the due process cause of action, (Dkt. No. 24, ¶ 113), and this included Plaintiff's allegations that solitary confinement is imposed in the step-down program "with no requirement of reviews of any sort" and that he "spent over a year in the step-down program without a meaningful review of his status." (Dkt. No. 24, ¶¶ 51–52; *see also id.* ¶ 74 ("[Plaintiff] received no reviews at all during his time in the step-down program."))[12] Defendants have not addressed what process was due or how due process was satisfied with respect to Plaintiff's confinement in the step-down program. Accordingly, without deciding what process Plaintiff was entitled to while in the step-down program, the Court finds that the allegations that he received *no* reviews of his status for more than one year are sufficient to state a claim. *See Proctor v. LeClaire*, 846 F.3d 597, 609 (2d Cir. 2017) ("It is well established that whenever process is constitutionally due, no matter the context, 'it must be granted at a meaningful time and in a meaningful manner.'" (citations omitted) (internal brackets and punctuation omitted)).

Accordingly, Defendants' motion to dismiss Plaintiff's procedural due process claims is denied.

### D.   QUALIFIED IMMUNITY

Defendants argue that they are entitled to qualified immunity on Plaintiff's Section 1983 claims because there is no controlling caselaw showing that Plaintiff had a "well-established

---

[12] In his opposition to Defendants' motion to dismiss, Plaintiff relies on 7 N.Y.C.R.R. § 316.3 to suggest what process he was due while in the step-down program. (Dkt. No. 30, at 30 (citing 7 N.Y.C.R.R. § 316.3(c) (providing that, upon an inmate's admission to a step-down unit, "a program management team shall" "develop an individual rehabilitation plan" for the inmate and "conduct periodic reviews of the incarcerated individuals"))). However, Section 316.3 is a new section of the regulations that was first effective December 16, 2020, after Plaintiff was moved out of the step-down program. Plaintiff has not pointed to regulations pertaining to the step-down program that were in effect during the relevant time period.

right to avoid transfer to the Step-Down program upon release from Ad Seg" and no "rule" requiring Defendants to review Plaintiff's status in the step-down program. (Dkt. No. 28-1, at 27). Plaintiff responds that Defendants violated his clearly established Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment, to be free from confinement that serves no legitimate penological purpose, and to have meaningful review of his detention in Ad Seg and the step-down program. (Dkt. No. 30, at 26–28).

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)); *see also generally Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an affirmative defense on which defendants bear the burden of proof. *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013). For a qualified immunity defense asserted in a motion to dismiss to be successful, the "facts supporting the defense [must] appear on the face of the complaint," and the plaintiff "is entitled to all reasonable inferences from the facts alleged . . . that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

The Court finds that Defendants are not entitled to qualified immunity at this early stage. Contrary to Defendants' argument, the FAC does not appear to allege that Defendants violated Plaintiff's rights by placing him in the step-down program instead of the general population upon his release from Ad Seg. Rather, Plaintiff challenges the total amount of time he spent in solitary confinement—whether in Ad Seg or the step-down program—as well as the lack of meaningful and timely reviews of his status in solitary confinement. (*E.g.*, Dkt. No. 24, ¶¶ 2–3, 39, 51–52).

However, prisoners have a clearly established right to be free from cruel and unusual punishment, which includes extremely long confinements in isolation and punishments or conditions which have no legitimate penological justification. *See, e.g., Gonzalez*, 802 F.3d at 224 (noting that "whether incarceration in the SHU violates the Eighth Amendment" "depends on the duration and conditions of the confinement"); *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (holding that among the "unnecessary and wanton inflictions of pain" forbidden by the Eighth Amendment are "those that are totally without penological justification" (quotation marks and citations omitted)). Moreover, it is well-settled in this Circuit that a "period of confinement under typical SHU conditions lasting longer than 305 days" triggers a protected liberty interest and procedural due process protections. *Gonzalez*, 802 F.3d at 223. The absence of a DOCCS "rule" requiring Defendants to review Plaintiff's status in the step-down program is not sufficient to establish qualified immunity at the motion to dismiss stage.

Accordingly, the Court denies Defendants' motion to qualified immunity without prejudice to raising the defense at a later time.

### E.   ELEVENTH AMENDMENT

Finally, Defendants argue that the Eleventh Amendment requires dismissal of Plaintiff's claims "[t]o the extent Plaintiff seeks damages against Defendants in their official capacities." (Dkt. No. 28-1, at 27). Plaintiff responds that he does not seek damages against Defendants in their official capacities, "but rather only seeks declaratory relief" against the DOCCS Defendants. (Dkt. No. 30, at 28).

The Eleventh Amendment bars suits against state officials in their official capacities unless Congress has abrogated the state's sovereign immunity, the state has consented to suit, or the plaintiff is "seeking injunctive relief against a state official for an ongoing violation of law or the Constitution." *N.Y. State Corr. Officers & Police Benevolent Ass'n, Inc. v. New York*, 911 F.

Supp. 2d 111, 124–25 (N.D.N.Y. 2012) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). Declaratory judgments are a form of injunctive relief that may be allowed under the third exception, so long as it is prospective. *Id.* at 129 (citations omitted). Declaratory relief against an official sued in his official capacity is not permitted, however, "when it would serve to declare only past actions in violation of federal law." *Id.*; *see also Finch v. N.Y. State Office of Children & Family Servs.*, 499 F. Supp. 2d 521, 538 n.138 (S.D.N.Y. 2007) ("[T]he Eleventh Amendment 'does not permit judgments against state officers declaring that they violated federal law in the past.'" (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993))).

Here, Plaintiff alleges that he was released into the general population of Mid-State on February 6, 2019 and released from DOCCS custody on February 23, 2021. (Dkt. No. 24, ¶¶ 31, 38). He does not allege that any of the Defendants continues to violate his federal rights or will do so in the future. Moreover, Plaintiff seeks retrospective declaratory relief in the FAC. (*Id.* at 31 (asking the Court to "[d]eclare that the Defendants' acts and omissions violated [Plaintiff's] constitutional rights")). Accordingly, because Plaintiff does not seek prospective declaratory relief, the Court grants Defendants' motion to dismiss Plaintiff's claims brought against Defendants in their official capacities.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's claims against Defendants Annucci and Venettozzi are

**DISMISSED**; and it is further

**ORDERED** that Plaintiff's claims against Defendants in their official capacities are

**DISMISSED**; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 28) is otherwise **DENIED**.

**IT IS SO ORDERED.**

Dated:  October 13, 2021
          Syracuse, New York

Brenda K. Sannes
U.S. District Judge