UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

WONDER WILLIAMS,

                              Plaintiff,                      9:20-cv-1417 (BKS/TWD)

v.

JAMES O'GORMAN, JOHN COLVIN, and MATTHEW THOMS,

                              Defendants.
_____

**Appearances:**

*For Plaintiff:*
Ellen M. Dunn
Sona De
Tyler J. Domino
Andrew A. Kunsak
Cassandra Liu
Briana Merritt
Laura Sorice
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019

Leslie Kuhn-Thayer
Michael L. Lisak
Sidley Austin LLP
One S. Dearborn Street
Chicago, IL 60603

*For Defendants:*
Letitia James
Attorney General of the State of New York
Ryan W. Hickey
Alexander Powhida
Assistant Attorneys General
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.   INTRODUCTION**

Plaintiff Wonder Williams filed this action under 42 U.S.C. § 1983 alleging constitutional violations based on his confinement in the Special Housing Unit ("SHU") in Administrative Segregation ("Ad Seg") in various New York Department of Corrections and Community Supervision ("DOCCS") correctional facilities. (Dkt. No. 24). The case is set for trial on September 16, 2024, (Dkt. No. 94), on Plaintiff's Eighth Amendment claims against Defendants James O'Gorman, John Colvin, and Matthew Thoms, (Dkt. No. 104; *see also* Dkt. No. 103). Presently before the Court are Defendants' motions in limine and Plaintiff's response. (Dkt. Nos. 134, 136). The Court heard oral argument on Defendants' motion at the final pretrial conference on September 6, 2024. For the following reasons, Defendants' motion is granted in part and denied in part.

**II.   DISCUSSION**

  **A.   Plaintiff's Criminal Convictions and Disciplinary History**

Defendants move to "be permitted to introduce evidence of the Plaintiff's felony convictions and DOCCS disciplinary history." (Dkt. No. 134, at 4). Plaintiff acknowledges that "[b]oth sides will need to address the fact of his conviction and sole disciplinary allegation in the context of Defendants' Ad Seg reviews," and initially sought to limit the evidence accordingly. (Dkt. No. 136, at 10). At the pretrial conference, Plaintiff argued that Defendants should be limited to introducing the offenses considered in the initial recommendation for Ad Seg, and the offenses discussed in his Ad Seg reviews.

Rule 401 of the Federal Rules of Evidence states that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b)

2

the fact is of consequence in determining the action." Fed. R. Evid. 401. "Under Rule 402, all [r]elevant evidence is admissible . . . unless an exception applies." *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 257 (S.D.N.Y. 2015) (internal quotation marks omitted) (quoting *U.S. v. White*, 692 F.3d 235, 246 (2d Cir. 2012)); *see also* Fed. R. Evid. 402. Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.[1]

As discussed in this Court's May 16, 2024 Memorandum-Decision and Order, Plaintiff entered DOCCS custody on January 8, 2010, to serve a sentence of 8 1/3 to 25 years on convictions for conspiracy, assault, and criminal possession of a weapon. (Dkt. No. 72-7, at 2). The Ad Seg recommendation states that

> On January 25, 2010 a letter was received by the District Attorney of the County of New York requesting that inmate Williams ability to communicate outside the prison setting be restricted due to public safety concerns. These concerns arise due to the fact that Williams, while incarcerated on Rikers Island for a shooting that occurred on New Years Eve 2007, hired a hit man to kill the three witnesses shot in this incident. His intention was to hire the hit man to prevent the witnesses from testifying against him at trial. This hit man was later identified as an undercover police officer. Williams executed this murder for hire plot through the use of telephones, U.S. mail, Western Union and jail visits. In particular, he arranged through the telephone and jail visits, for the undercover to have the witnesses killed in exchange for money. He also arranged, through the telephone and mail, to have family members, including his grandmother and the mother of his child, wire $1400 to the under cover officer via Western Union. After the plot was uncovered he was rearrested and charged with one count of Conspiracy in the Second Degree.

---

[1] While Defendants argue that "[e]vidence relating to Plaintiff's convictions is admissible under Rule 609," (Dkt. No. 134, at 5), Rule 609 governs when criminal convictions may be introduced to impeach a witness, *see* Fed. R. Evid. 609(a). Defendants have not indicated that they plan to use the evidence of Plaintiff's convictions for impeachment purposes. (*See generally* Dkt. No. 134). Accordingly, the Court has not addressed Rule 609.

3

(*Id.*).  The Ad Seg recommendation further states that while under additional imposed communication restrictions, Plaintiff "was able to convince a member of the jails [sic] Clergy to permit him to use his personal cell phone during religious services. (*Id.*). Sr. Inv. Duncan stated that "[d]ue to these factors the District Attorney's Office believes that Williams [sic] ability to communicate and have contact with outside person's [sic] poses a serious threat to the safety of those involved in his case." (*Id.*). While in Ad Seg, Plaintiff also received a disciplinary sanction for having a weapon in his cell. (Dkt. No. 71-3, at 40–41).

Plaintiff's criminal convictions, the information in the administrative segregation recommendation and his disciplinary history are highly relevant to a determination of whether Defendant O'Gorman had a legitimate penological justification for maintaining Plaintiff in Ad Seg. (*See id.* at 27–31). Defendant O'Gorman should be permitted to testify to the matters he considered in assessing Plaintiff's continued confinement in Ad Seg. Defendants, however, have not provided a basis for eliciting details of Plaintiff's offenses that go beyond what O'Gorman considered in his Ad Seg reviews. Such additional details would not appear to be relevant to whether Defendant O'Gorman had a sufficient penological justification for maintaining Plaintiff in Ad Seg and would raise significant concerns under Fed. R. Evid. 403. The Court will, however, address any further issues at trial. Plaintiff's counsel may propose an appropriate limiting instruction.[2]

### B.     Compensatory Damages

Defendant argues that "Plaintiff should be precluded from seeking compensatory damages at trial" under Section 1997e(e) of the Prison Litigation Reform Act of 1995 (the

---

[2] To the extent any counsel seeks a limiting instruction concerning any evidence that has been admitted for a particular purpose, the Court will consider an appropriate limiting instruction, informing the jury how they are to consider the evidence.

"PLRA") because he has not shown a "prior physical injury." (Dkt. No. 134, at 6–8). Plaintiff argues that he "has alleged that he suffered physical injuries" and that this issue should not be decided on a motion in limine. (Dkt. No. 136, at 4–6).

Section 1997e(e) of the PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). Such physical injury must "more than *de minimis*." *Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999) (quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

Plaintiff's amended complaint alleges that Plaintiff suffered multiple conditions as a result of his placement in Ad Seg, including migraines, back and neck pain, the development of a thyroid condition, and weight loss due to that condition. (Dkt. No. 24, ¶¶ 55–58). Whether Plaintiff is able to establish a physical injury is a question that will depend on the evidence that is presented at trial. *See Johnson v. White*, No. 14-cv-715, 2015 WL 6449126, at *6, 2015 U.S. Dist. LEXIS 144011, at *14 (N.D.N.Y. Oct. 23, 2015) ("[T]he determination of actual injury is a factually specific question which should be decided after Plaintiff has had an opportunity to present his case." (citation omitted)); *Encarnacion v. Olivo*, No. 21-cv-986, 2024 WL 896362, at *10, 2024 U.S. Dist. LEXIS 35864, at *26 (N.D.N.Y. Mar. 1, 2024) ("The Court has no way of knowing what Plaintiff will testify to during trial and the Court cannot conclude whether there will be evidence that he suffered a more than *de minimis* physical injury sufficient to allow the jury to consider compensatory damages under the PLRA."). Accordingly, the Court reserves decision on whether Plaintiff may ask for compensatory damages at trial. *See Coleman v. Durkin*, 585 F. Supp. 3d 208, 212 (N.D.N.Y. 2022) ("Courts considering a motion *in limine* may

reserve decision until trial so that the motion is placed in the appropriate factual context." (citing *Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996))).

## C. Evidence of Emotional or Psychological Harm

Defendants argue that Plaintiff's experts should be precluded from testifying to any emotional or psychological harm Plaintiff suffered as Plaintiff cannot recover compensatory damages without a prior showing of physical injury under Section 1997e(e) of the PLRA. (Dkt. No. 134, at 9). In addition to citing its previous argument regarding the applicability of Section 1997e(e), Plaintiff argues that the motion is untimely,[3] that the evidence is relevant to whether Defendants disregarded an excessive risk to Plaintiff, and that the evidence is relevant to Plaintiff's claim for punitive damages. (Dkt. No. 136, 6–7).

As discussed, *supra*, if the jury finds that Plaintiff suffered physical harm, the jury may then consider evidence of emotional or psychological harm. *See* 42 U.S.C. § 1997e(e). Additionally, both parties agreed at the pretrial conference that evidence of emotional or psychological harm may be relevant to liability. (*See also* Dkt. No. 136, at 6 (arguing that "[e]vidence about the 'detrimental effect on mental health' from long-term solitary or restricted confinement can demonstrate whether Defendants were disregarding an excessive risk to plaintiff's health" (citation omitted))). Accordingly, the Court denies Defendants' motion.

---

[3] Defendants' motion to preclude expert testimony was, as Plaintiff notes, filed after the April 2023 deadline for a motion to preclude expert testimony, (*see* Dkt. Nos. 41, 69, 134), and Defendants should have requested an extension of that deadline or made a showing of good cause to permit a late submission. However, there is no indication that there has been any failure to comply with the deadlines for the disclosure of any expert discovery; the Court issued its summary judgment ruling, on May 16, 2024, finding that Plaintiff's Eighth Amendment claims survive for trial, (*see* Dkt. No. 103); and Defendant thereafter filed a timely motion in limine seeking to preclude expert testimony, (*see* Dkt. No. 134). The Court will not preclude expert testimony, on this record based upon an untimely motion. *See Allen v. Koenigsmann*, No. 19-8173, 2021 WL 1552771 at *3, n.9, 2021 U.S. Dist. LEXIS 75865, at *7 n.9 (S.D.N.Y. Apr. 20, 2021).

Counsel may to submit a proposed jury instruction concerning compensatory damages (but not nominal or punitive damages).[4]

### D.    Plaintiff's Grievances

Defendants state that they "anticipate that Plaintiff will offer evidence of numerous grievances filed by Plaintiff during his time in DOCCS custody concerning the conditions with [A]d [S]eg." (Dkt. No. 134, at 10). They argue that if used "to demonstrate the allegedly poor conditions in [A]d [S]eg . . . the grievances must be precluded as hearsay." (*Id.*). Additionally, they argue that if the grievances "are offered to prove not the truth of their contents, but that Defendants Colvin and Thoms were aware of, or responded to, these grievances, they must similarly be precluded" because Defendants Colvin and Thoms "lacked the authority to retain Plaintiff in [A]d [S]eg at any point," and therefore their awareness of the grievances "is irrelevant to the issue before the jury." (*Id.*). Plaintiff contests that the grievances are hearsay, and argues that, even if they are, several hearsay exceptions apply. (Dkt. No. 136, at 7–9). Plaintiff asks that due to the need to evaluate the grievances in context, the Court should deny the motion at this time. (*Id.*).

Rule 801(c) defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Plaintiff's statements in his grievances used to prove that Plaintiff experienced the conditions described therein would be hearsay and consequently inadmissible if offered by the Plaintiff. *See* Fed. R. Evid. 802.

---

[4] "Section 1997e(e) is a limitation on recovery of damages for mental and emotional injury in the absence of a showing of physical injury, it does not restrict a plaintiff's ability to recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief." *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002)); *see also Walker v. Schult*, 45 F.4th at 598, 612–13 (2d Cir. 2022).

However, Plaintiff may offer the grievances not for their truth, but to show that Defendants Thoms and Colvin had notice of the conditions under which Plaintiff was held. *See U.S. v. Dupree*, 706 F.3d 131, 137 (2d Cir. 2013) ("[A] statement is not hearsay where . . . it is offered, not for its truth, but to show that a listener was put on notice." (citing *George v. Celotex Corp.*, 914 F.2d 26, 30 (2d Cir. 1990))). Plaintiff has Eighth Amendment condition of confinement claims for the period that Defendants Colvin and Thoms were Superintendents of Five Points Correctional Facility and Mid-State Correctional Facility. (Dkt. No. 103, at 33; *see id.* at 11). As Plaintiff explains, "[w]hether [Defendants Colvin and Thoms] were aware of the conditions and harm to [Plaintiff] is plainly relevant to the subjective prong of his Eighth Amendment claims." (Dkt. No. 136, at 7–8). At the pretrial conference, the parties agreed that Plaintiff may introduce grievances to show Defendants Colvin and Thoms were on notice of the conditions Plaintiff experienced. Again, counsel may submit a proposed limiting instruction.

Plaintiff also argues that certain hearsay exceptions may apply under Rules 803(1) (present sense impression), 803(3) (then-existing mental, emotional of physical condition), and 803(5) (recorded recollection). (Dkt. No. 136, at 8–9). The Court agrees with Plaintiff that the question of whether any of these specific exceptions apply "is context specific," (*See id.* at 9), and Plaintiff must lay a foundation for any specific statement or statements sought to be offered into evidence. The Court therefore will reserve judgment on any grievances or portions thereof sought to be admitted for trial under these provisions. *See Coleman*, 585 F. Supp. 3d at 212 (citation omitted).

E.   **Specific Amounts in Damages**

Defendants ask that the Court "preclude Plaintiff from requesting any specific dollar amount at the trial of this action." (Dkt. No. 134, at 13). Plaintiff argues that "Defendants' motion should be denied to the extent Defendants intend it to preclude Plaintiff's counsel from

8

suggesting appropriate quantitative comparators or ranges during summation," and suggests that the Court could "provide a limiting instruction" explaining that Counsel's suggestions are not evidence. (Dkt. No. 136, at 9–10).

In the Second Circuit, the decision of whether to permit an attorney to argue for specific amounts in damages "is best left to the discretion of the trial judge, who may either prohibit counsel from mentioning specific figures or impose reasonable limitations, including cautionary jury instructions." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997). However, "specifying target amounts for the jury to award is disfavored." *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995), *vacated on other grounds sub nom. Consorti v. Owens-Corning Fiberglass Corp.*, 518 U.S. 1031 (1996). Target amounts "anchor the jurors' expectations of a fair award at the place set by counsel, rather than by the evidence." *Ferreira v. City of Binghamton*, No. 13-cv-107, 2016 WL 4991600, at *5, 2016 U.S. Dist. LEXIS 126011, at *14 (N.D.N.Y. Sept. 16, 2016) (quoting *Consorti*, 72 F.3d at 1016). Additionally, courts within the Second Circuit often preclude plaintiffs from naming particular sums when the damages are non-economic. *See Ross v. Guy*, No. 18-cv-1340, 2022 WL 768196, at *7, 2022 U.S. Dist. LEXIS 44714, at *19–20 (E.D.N.Y. Mar. 14, 2022).

Plaintiff seeks to put forward comparators or ranges to "help the jury contextualize, in quantitative terms, what damages to award" and argues that otherwise, "the jury will be left with no reference point to begin their deliberations." (Dkt. No. 136, at 10). Here, the damages are non-economic, and the Court is disinclined to allow Plaintiff to introduce specific amounts or ranges to the jury. But because the Court's decision may be impacted by the evidence admitted at trial, the Court reserves decision on the matter.

### F. Previously Dismissed Claims

Defendants request "a pretrial ruling that prohibits Plaintiff from offering any evidence or testimony relating to Plaintiff's various claims were [sic] dismissed during this action" and "[t]o the extent that Plaintiff seeks to admit any documents that include information about such matters," that these documents be "appropriately redacted." (Dkt. No. 134, at 14–15). Plaintiff responds that Defendants' request is "overbroad" because "[a]lthough Plaintiff's Fourteenth Amendment claim was dismissed on summary judgment and will not be argued at trial by either side, the remaining Eighth Amendment claim arises out of the same facts" and states that "Defendants' request to exclude should be limited to the existence of a Fourteenth Amendment claim." (Dkt. No. 136, at 11–12).

At the pretrial conference, the parties agreed that neither party may reference the existence of a prior Fourteenth Amendment claim, but that the facts and evidence relevant to the prior Fourteenth Amendment claim are relevant and admissible as to the remaining Eighth Amendment claims. The motion is therefore denied as moot.

### G. Defendants' Remaining Motions

Defendants asks the Court, "in an abundance of caution," to preclude Plaintiff from introducing evidence or making any claims of a conspiracy against DOCCS or Defendants. (Dkt. No. 134, at 11–13). Defendants also request that "[a]ll references to indemnification or potential for indemnification should be precluded." (*Id.* at 14 (citation omitted)). Plaintiff argues that these motions should be denied as moot because neither a conspiracy claim, nor an indemnification theory are at issue here. (Dkt. No. 136, at 12). The Court accordingly denies the motions as moot.

### III. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion in limine, (Dkt. No. 134), is **GRANTED in part** and **DENIED in part** as set forth above.

**IT IS SO ORDERED.**

Dated: September 9, 2024
Syracuse, New York

*Brenda K. Sannes*
Brenda K. Sannes
Chief U.S. District Judge